CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
DEC 20 2006
JOHN F. CORCORAN, CLERK
BY: /s/ Bright
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DARRYL STACY HARRIS,<br>Petitioner, | )<br>) |
| | ) Civil Action No. 7:06-cv-00189 |
| v. | ) **MEMORANDUM OPINION** |
| GENE JOHNSON, DIRECTOR<br>OF THE DEP'T. OF CORRECTIONS,<br>Respondent. | )<br>) By: Hon. James C. Turk<br>) Senior United States District Judge |

Petitioner Darryl Stacy Harris, proceeding pro se, brings this action as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.[1] In his petition, Harris challenges his confinement pursuant the April 2, 2001, judgment of the Circuit Court of Botetourt County, convicting and sentencing him on charges of eluding the police and reckless endangerment of a child; for these offenses, the court sentenced him to twelve months and five years in prison with two years suspended. The respondent filed a motion to dismiss, arguing that the claims are procedurally defaulted or, in the alternative, that they are without merit. Petitioner responded to the motion to dismiss, making the matter ripe for the court's consideration. Upon review of the record, the court concludes that the motion to dismiss must be granted.

I. Background

Briefly, the state's evidence showed the following sequence of events. See Plea Hearing Tr., 12-27-2000, at 27-38. On June 23 and 24, 2000, Harris assaulted his wife at their Lexington, Virginia home and abducted her at knife point.. He forced her and her three-year-old son to get into his vehicle and drove through Rockbridge County into Botetourt County; the child was not restrained in a child safety seat. At some point, Harris stopped at a filling station, where his wife was able to ask a clerk to report her abduction. Police then tracked down the vehicle Harris was driving and tried to pull him over. He drove away at high speed with his wife and the child still in the car.

---

[1] At the time he filed his petition, Harris was incarcerated pursuant to the sentences he challenges here. As of August 7, 2006, however, he was released from prison. Because the court herein finds that his claims must be dismissed as procedurally barred, the court need not address whether or not they became moot upon his release from detention.

1

During the ensuing chase, Harris wove through traffic at speeds far above the speed limit, at times over 110 miles per hour, made numerous U-turns on a divided highway, passed a truck on the right shoulder, and broke other traffic laws. Harris finally pulled over, and troopers arrested him. They recovered a knife from inside the car, and Harris admitted that he had held it against his wife's side.

Based on this sequence of events, law enforcement authorities in Rockbridge County and Botetourt County charged Harris with various offenses. Pursuant to an agreement between the parties, the Hon. George E. Honts, III, conducted the plea hearing for all charges in the Circuit Court for Botetourt County on December 27, 2000, and conducted the sentencing hearing for all offenses in the Circuit Court for Rockbridge County on April 2, 2001. Harris pled guilty to Rockbridge County charges of marital sexual assault, case number CR660-00, and abduction, case number CR661-00. For these offenses, the judge sentenced him to concurrent sentences of three years, suspended after one year served, and five years suspended after three years served, for a total sentence of three years imprisonment.[2] Harris also pled guilty to Botetourt County charges of reckless endangerment, case number 466-f, and eluding the police, case number 463-m. For these offenses, the court sentenced him to concurrent sentences of twelve months and five years suspended after three years served.

Court records indicate that Harris has had a complicated course of post-conviction proceedings.[3] Harris filed an appeal of his Botetourt convictions, but the appeal was denied because no transcript or statement of facts was timely filed. (Record No. 1713-01-3). Harris then filed a petition for writ of habeas corpus in the Supreme Court of Virginia. (Record No. 032009). The Court granted Harris a writ of habeas corpus to allow Harris a belated appeal from his Botetourt County convictions and dismissed without prejudice the remainder of his habeas claims related to

---

[2] The Rockbridge County convictions and sentences are not at issue in this petition.

[3] See Harris v. Johnson, Case No. 7:05-cv-00615 (W.D. Va. Oct. 12, 2005); Harris v. Johnson, Case No. 7:04-cv-00694 (W.D. Va. June 24, 2005), appeal dism'd, No. 05-7377 (4th Cir. February 17, 2006).

2

these convictions. Appointed counsel filed a belated appeal of the Botetourt County convictions, and this appeal, too, was dismissed on September 8, 2004, because no transcript or statement of facts was timely filed. (Record No.0629-04-3). Harris filed another habeas petition in the Supreme Court of Virginia and in May 2005, was again granted a belated appeal of the Botetourt County convictions. Except for the claim of ineffective assistance in perfecting the appeal, all of the other state habeas claims Harris brought were dismissed without prejudice. The second belated appeal that Harris filed in the Court of Appeals of Virginia was denied on November 2, 2005 (Record No. 1348-05-3), and his subsequent appeal to the Supreme Court of Virginia was refused on March 27, 2006 (Record No. 052424). He filed his federal case on or about March 28, 2006.

In his federal petition, Harris alleges the following grounds for relief:

1. (a) Whether subsection B in Va. Code Ann. § 18.2-371.1 is unconstitutional because it is so vague that it is void as applied to petitioner's conduct.

    (b) Whether the Commonwealth's Attorney could properly elect to prosecute petitioner for a non-specific felony when the legislature has prescribed a specific misdemeanor crime and punishment for petitioner's exact conduct.

    (c) Whether subsection B in Va. Code Ann. § 18.2-371.1 is unconstitutional because it is drafted in such a manner that a person may be convicted of a felony even though he has no mens rea to commit a crime.

2. (a) Whether the trial court exceeded its legislative authority by imposing multiple punishments for the same act.

    (b) Whether the lesser included offense is an offense which is composed of elements that are also elements of the greater offense.

II.

A federal court may not grant habeas relief under § 2254 unless petitioner has exhausted available state court remedies. § 2254(b). Even after petitioner has exhausted state court remedies, if the highest state court has declined to consider his claims on the merits based on his default of an adequate and independent state procedural rule, the claims are also procedurally barred from federal

3

habeas review, absent a showing of cause and prejudice or actual innocence.[4] See Harris v. Reed, 489 U.S. 255, 262 (1989). Similarly, if petitioner brings federal habeas claims that were not presented to the highest state court, but it is clear that the state's procedural law would now bar state review, federal habeas review is precluded, absent a showing of cause and prejudice or actual innocence. Teague v. Lane, 489 U.S. 288 (1989); Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990).

The § 2254(b) exhaustion requirement and the procedural default doctrine are "inseparable" in achieving the goal of comity between the federal and state court systems. Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000). "The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." Id. Allowing state inmates to obtain federal habeas relief after "letting the time run" so that state court remedies were no longer available to them would "utterly defeat" the purpose of the exhaustion doctrine. Id. at 453.

> Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have concededly exhausted his state remedies, it could hardly be said that, as comity and federalism require, the State had been given a fair opportunity to pass upon his claims.

Id. (citations and internal quotation marks omitted). For these reasons, errors of counsel may serve as cause to excuse the procedural default of a specific constitutional claim only if petitioner demonstrates (1) that the errors were so egregious that they violated petitioner's constitutional right to effective assistance of counsel, Strickler v. Green, 527 U.S. 263, 283 (1999), and (2) that the ineffective assistance claims themselves are not procedurally defaulted. Edwards, 529 U.S. at 453.

A state procedural rule is "adequate" if it is regularly or consistently applied by the state court, see Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and is "independent" if it does not

---

[4] To state a claim of actual innocence sufficient to excuse procedural default, a petitioner must show "it is more likely than not that no reasonable juror would have convicted him" of the underlying crime if jurors had received specific, reliable evidence not presented at trial. Bousley v. United States, 523 U.S. 614, 623 (1998), citing Schlup v. Delo, 513 U.S. 298, 327 (1995).

4

"depend[ ] on a federal constitutional ruling. Ake v. Oklahoma, 470 U.S. 68, 75 (1985). Rule 5A:18 of the Rules of the Supreme Court of Virginia states that the appellate court will not consider an issue on appeal unless the appellant raised an objection at trial. This contemporaneous objection rule is an adequate and independent state procedural bar which forecloses federal habeas review. Conquest v. Mitchell, 618 F.2d 1053, 1055-56 (4th Cir.1980).

In his petition to the Court of Appeals of Virginia, Harris raised numerous claims, including all of the five claims he raised in this federal petition (Claims 1(a), 1(b), 1(c), 2(a), and 2(b)). The court of appeals found that Harris had waived these claims by entering a valid guilty plea. When Harris appealed to the Supreme Court of Virginia, he raised only two claims: whether his guilty plea waived any double jeopardy challenge and whether the guilty plea barred an appeal challenging the constitutionality of the reckless endangerment statute under which he was convicted. In the motion to dismiss the supreme court petition, respondent argued that all of the claims that Harris had raised to the court of appeals were procedurally defaulted because Harris had not raised them at trial. The Supreme Court order dated March 27, 2006, refused the petition for appeal "[u]pon review of the record in this case and consideration of the argument submitted in support of and in opposition to the granting of the appeal."

Respondent argues that all of Harris' federal habeas claims are procedurally defaulted. Upon review of the record, the court must agree. The Supreme Court of Virginia clearly dismissed Harris' appeal on the procedural default ground argued in respondent's motion to dismiss: failure to raise the claims at trial. The court did not expressly cite Rule 5A:18 in its brief order; however, the dismissal of the case was expressly based on the arguments in respondent's brief in the Supreme Court proceedings (that the claims were procedurally defaulted under Rule 5A:18). Accordingly, this court finds that Claims 1(a) and 2(a) are procedurally defaulted under the Harris default rule, because the state supreme court expressly dismissed them as defaulted. These two claims are thus barred from federal habeas review absent a showing of cause and prejudice or actual innocence. Claims 1(b), 1(c), and 2(b) were not raised to the Supreme Court of Virginia during the appeal

5

proceedings. It is clear, however, that if Harris had properly raised them, they would have been dismissed because he had failed to raise them at trial. Moreover if he raised them now in a habeas petition, the state court could dismiss them on the same ground. Thus, the court finds that these three claims are procedurally defaulted and barred from federal habeas review under the Teague default rule. As all of the claims Harris raised in his federal petition are thus defaulted, this court may not review them on the merits absent a showing of cause and prejudice or actual innocence.

In his responses to the motion to dismiss, Harris argues that his attorney's ineffective assistance at trial should serve as cause to excuse his procedural defaults. Specifically, he says that counsel misrepresented to him the terms of the plea agreement and its likely consequences, that counsel failed to object to obvious errors during trial proceedings, and that counsel failed to object on grounds that the reckless endangerment statute was unconstitutionally vague as applied to Harris' case and that sentencing Harris for eluding police and reckless endangerment constituted double punishment for the same conduct, in violation of the Double Jeopardy Clause. Harris claims that he presented these ineffective assistance claims to the court of appeals as support for his argument that his guilty plea was unknowing and invalid.

Direct appeal is not the proper forum for ineffective assistance claims in Virginia. See Lenz v. Commonwealth, 544 S.E. 2d 299, 304 (Va. 2001) (claims raising ineffective assistance of counsel in a Virginia criminal case must be asserted in a habeas corpus proceeding and are not cognizable on direct appeal). Therefore, it is clear that the court of appeals did not consider any such claims that may have been tucked away in briefs Harris filed during appeal proceedings. After the Supreme Court of Virginia refused his petition for appeal, however, he could have raised his ineffective assistance claims in a third state habeas petition, as all other habeas claims had been dismissed without prejudice. Instead, Harris filed his federal petition immediately, without exhausting his state court remedies as to his ineffective assistance claims. In August 2006, Harris was released from prison. The records before this court do not indicate whether he was released because he had been granted parole or because he had completed his prison term. In any event, if he now raised his

6

unexhausted claims in a state habeas petition, the state court would dismiss them because he is no longer confined pursuant to the convictions he challenges here. See McClenny v. Murray, 431 S.E.2d 330, 134-35 (Va. 1993) (finding that habeas corpus actions in Virginia address only "whether or not the prisoner is detained without lawful authority," thus limiting scope of habeas inquiry to "the propriety of the prisoner's present detention"; "[a] petition for habeas corpus . . . [tests] the legality of the incarceration rather than the guilt or innocence of the prisoner"). As McClenny makes clear, it is a well established state procedural rule that one who is no longer incarcerated cannot proceed in habeas to challenge one's Virginia criminal conviction or sentence. As Harris' ineffective assistance claims are thus procedurally defaulted under this independent and adequate state rule, they are also procedurally barred from federal habeas review under the Teague rule. Harris offers no explanation for his failure to bring his ineffective assistance claims in a state habeas petition after his direct appeal was denied in March 2006. He also fails to demonstrate that he is actually innocent of the conduct for which he stands convicted. See Sawyer v. Whitley, 505 U.S. 333, 339, (1992) (finding that "actual innocence" means factual innocence, not mere legal insufficiency). Therefore, he fails to circumvent his procedural default of the ineffective assistance claims, and these claims cannot serve as cause to excuse Harris' default of other claims on direct appeal.[5]

Based on the foregoing, the court finds that all of the claims Harris raises in this habeas action must be dismissed as procedurally barred from federal habeas review. Moreover, for the reasons stated in the respondent's brief, the court also finds that Harris' claims alleging double jeopardy and challenging the constitutionality of the reckless endangerment statute are utterly

---

[5] In his responses to the motion to dismiss, Harris also raises several claims challenging the validity of his guilty plea. Specifically, he argues that his guilty plea was unintelligent because the trial court erroneously advised him during the plea hearing that the range of punishment for the reckless endangerment charge was higher than it actually was, that the court failed to advise him at the plea hearing that he would not have a right to appeal after a guilty plea, that he unwittingly signed the plea agreement without reviewing it and without understanding its contents or consequences, that neither counsel nor the court reviewed the plea agreement terms with him, that the agreement was not properly signed by all necessary parties, and that he believed the plea agreement would net him a total sentence of three years on all charges in both jurisdictions. Because he failed to raise these claims on direct appeal or in state habeas proceedings before his release from incarceration, the Supreme Court of Virginia would find them defaulted for the reasons already stated.

7

without merit. The court will grant the motion to dismiss and strike this case from the active docket. An appropriate order shall be issued this day.

The petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a circuit court of appeals justice or this court issues a certificate of appealability, pursuant to 28 U.S.C. § 2253( c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. § 2253(c)(1). Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, the court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal, petitioner must file a notice of appeal with this court within 30 days of the date of entry of this opinion and the accompanying final order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

ENTER: This 20th day of December, 2006.

/s/ James C. Turk
Senior United States District Judge